UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRADY SANDERSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:07-CV-0425-G |
| BASIL HYDER, ET AL., | ) | |
| | ) | **ECF** |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion by the plaintiffs Grady Sanderson and Tracy Sanderson (collectively, "the Sandersons" or "the plaintiffs") to remand this case to the state court from which it was removed. For the reasons stated herein, the motion is denied.

### I. BACKGROUND

This case stems from a vehicular accident in which the plaintiffs' vehicle struck a truck being driven by Basil Hyder ("Hyder"), a named defendant in this action. At the time of the accident, Hyder was employed by the defendant Swift Transportation Company, Inc. ("Swift" or "the defendant"). On February 13, 2007, the plaintiffs

filed their original petition in the 68th Judicial District Court of Dallas County, Texas. Notice of Removal ¶ 5. To date, Hyder has not been served in this suit, and the plaintiffs have been unable to locate him. *See* Plaintiffs' Original Petition ("Petition") ¶ 3, *attached to* Notice of Removal *as* Exhibit 1. Swift timely removed the case to this court on March 7, 2007, alleging subject matter jurisdiction on the basis of diversity of citizenship. Notice of Removal ¶ 7. The instant motion to remand followed.

## II.  ANALYSIS

In this motion, the plaintiffs argue that Swift has failed to establish that it is of diverse citizenship from the two plaintiffs. Specifically, the plaintiffs aver that Swift has not demonstrated that its principal place of business is a state other than Texas.

Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction." Under this statute, "[a] defendant may remove a state court action to federal court only if the action could have originally been filed in the federal court." *Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d 1157, 1160 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citations omitted). Removal jurisdiction must be strictly construed, however, because it "implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); see also *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir.

1988). Furthermore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934). The burden of establishing federal jurisdiction is on the party seeking removal. *Frank*, 128 F. 3d at 921-22; *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise removal jurisdiction: (1) the existence of a federal question and (2) complete diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331, 1332. The court can properly exercise jurisdiction on the basis of diversity of citizenship if the parties are of completely diverse citizenship and the case involves an amount in controversy of at least $75,000. *See* 28 U.S.C. §1332(a).[1] The defendant asserted only diversity jurisdiction in its notice of removal. The parties are in agreement that the amount in controversy is more than $75,000; the only point of contention is the citizenship of Swift.

### A. Citizenship of Corporate Parties

For the purpose of establishing diversity of citizenship jurisdiction, a corporation is deemed to be a citizen of the state in which it is incorporated and in

---

[1] Section 1332 states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States . . . ." 28 U.S.C. § 1332(a)(1).

which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). "[E]very corporation has one and only one principal place of business." *J.A. Olson Company v. City of Winona, Mississippi*, 818 F.2d 401, 406 (5th Cir. 1987).

It is incumbent upon Swift, the removing party seeking to invoke this court's limited subject matter jurisdiction, to prove that its principal place of business is not Texas. See *Howery v. Allstate Insurance Company*, 243 F.3d 912, 920 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001). All disputes must be resolved in favor of the plaintiffs, the non-removing parties. *Dodson v. Spiliada Maritime Corporation*, 951 F.2d 40, 42 (5th Cir. 1992).

The Fifth Circuit applies the "total activity" test to determine a corporation's principal place of business for diversity purposes. See *Howery*, 243 F.3d at 920 (citing *Olson*, 818 F.2d at 404-10).[2] The "total activity" test is a "synthesis of the 'place of activity' and 'nerve center' tests." *Id.* at 920. The "place of activity" test focuses on the day to day activities of the business, see *Olson*, 818 F.2d at 408-09, while the "nerve center" test focuses on the site from which the business is directed and

---

[2] The Olson court laid out three guiding precepts for conducting a principal place of business analysis: (1) the principal place of business of a corporation with operations spread over several states is generally its "nerve center;" (2) the principal place of authority and activity is generally more important than a detached location of executive offices; and (3) the principal place of business of a corporation with its corporate headquarters in one state and its place of activity in another will generally be in the state of its operations. *Olson*, 818 F.2d at 411; see also *Barkley v. Beneficial Corporation*, No. 4:03CV029-D-B, 2003 WL 22243890, at *2 (N.D. Miss. Sept. 25, 2003).

controlled, see *id.* at 406-08.  Under the total activity test, a court looks to the "nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community."  *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir.), *cert. denied*, 525 U.S. 876 (1998).

In the case at bar, Swift asserts that it is a citizen of only one state -- Arizona.  Notice of Removal ¶ 7.  Specifically, the defendant avers that it is incorporated under the laws of the State of Arizona and that its principal place of business is in Arizona.  *Id.*  The Sandersons do not dispute that Swift is incorporated in Arizona, but they argue that Swift's principal place of business is in Texas.  When the uncontroverted facts before the court are examined, the plaintiffs' argument cannot stand.

Through the affidavit of James F. Mahoney, a vice-president for Swift, the defendant established the following facts regarding its operation.  First, Swift is headquartered in Arizona.  *See* Affidavit of James F. Mahoney ¶ 3, *attached to* Appendix to Swift's Response to Plaintiffs' Motion to Remand *as* Exhibit A.  Second, all executive and policy decisions are made at the corporate headquarters.  *Id.* ¶¶ 3, 4, 6.  Third, Swift operates a far-flung enterprise with business activities occurring in twenty-seven states, including Texas.  See *id.* ¶ 5; *see also* Swift Transportation Company, Inc. 2005 Annual Report ("Annual Report") at 4-5, *attached to* Affidavit of Steve C. Lee *as* Exhibit 1.

The evidence submitted by the plaintiffs in support of remand is consistent with the Mahoney affidavit's statement that Swift operates a far-flung enterprise. The Sandersons have submitted a copy of Swift's 2005 Annual Report through the affidavit of their attorney Steven C. Lee. The annual report establishes that Swift operates thirty-eight facilities in the United States and Mexico. *See* Annual Report at 4-5. Five of the facilities are located in the State of Texas, the most of any state.[3] See *id.* Two facilities are operated in Arizona. See *id.* at 4.

When a corporation conducts business on a national scale, "the sole nerve center of that corporation is more significant in determining principal place of business," and "when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant." *Olson*, 818 F.2d at 411. The court finds the former, rather than the latter, to be applicable here. Texas is not the situs of Swift's "sole operation;" in fact, for Swift, there is no such state. The defendant appears truly to be a far-flung enterprise.

Though the plaintiffs are correct that a "significant" amount of activity is conducted by Swift in Texas, the standard for the "total activity" test is not whether a significant amount of activity occurs in a certain state. Similarly, while the defendant's activities in Texas may be more significant than its activities in any other single state, the standard is not which state has the most significant amount of

---

[3] The state with the second greatest number of facilities is California, where Swift operates at four locations.

activity. Rather, the court is to examine the corporation as a whole and determine which single state constitutes the corporation's principal place of business. *Olson*, 818 F.2d at 411-412. Because of the nature of Swift's operations, the court, in accordance with *Olson*, gives greater emphasis to the "nerve center" component of the "total activity" test.

Undoubtedly, Swift's principal place of business is Arizona. In this far-flung business operating in more than a dozen states, the nerve center serves as the best appraisal of Swift's principal place of business. Accordingly, the plaintiffs and the defendant are of completely diverse citizenship and removal under 28 U.S.C. § 1441 was proper.

### III. CONCLUSION

For the reasons stated above, the plaintiffs' motion to remand is **DENIED**.

**SO ORDERED**.

May 16, 2007.

_____
A. JOE FISH
CHIEF JUDGE